Case number 24-1518, Jade Pemberton v. Bells Brewery Inc. Oral argument, 15 minutes per side. Mr. Myers for the appellant. Good afternoon, your honors. May it please the court. My name is Ryan Myers. I'm here on behalf of the plaintiff appellant, Jay Pemberton. The trial court in this case erred in granting the defendant's motion for summary judgment and denying the plaintiff's motion for reconsideration because there are genuine issues of material fact that preclude summary judgment. First of all, Pemberton was able to establish a prima facie case for disability discrimination that would require him to have a disability, be otherwise qualified for the job with or without accommodation, suffer adverse employment action, have his employer know of his disability and know that his position was replaced or open. That comes from Williams v. AT&T Mobility Services. Here, plaintiff did have a disability. He had injured his back several times while working for defendant, which led to him having days where he could barely complete the duties that were given to him, including lifting heavy objects. So they have the legitimate basis, or at least their claimed basis for the various actions they took against your client, including his inappropriate remarks to a veteran. And your brief repeatedly responds to that by suggesting that the veteran at one point called him, what is it, a big teddy bear. Yes. So the district court said there's no basis in the record to think that this is accurate. And then you repeat the statement in your brief and you cite on page 27, ECF number 80-6 at 44, lines 1 through 9. I went to there and there's no basis for thinking that the teddy bear line is on those pages. So do you have a record site for this teddy bear remark that you could give us today? I am troubled by the fact that the district court calls your position out saying that this isn't in the record. And then you just double down on appeal and you just ignore what the district court said and you said it's there. And I'm just curious if this is anywhere in the record. I do not have a direct site for that, Your Honor. My understanding was that it was in the record somewhere. Well, I would appreciate maybe supplemental.  Find in the record where this is and please draw it to our attention. Because to be honest, you cite two different places in your brief. You cite two different record sites. And neither of those record sites, as far as I could tell, maybe I'm mistaken. So that's why I want to give you a chance to clarify. But I'm quite troubled by the reliance on a statement that does not seem to exist. I will absolutely follow up with this court to supplement and find that statement in the record to supplement this court. Do you have any other evidence besides that alleged statement to support a disputed issue of fact on pretext? The other evidence that we rely on, Your Honor, is the temporal proximity between actions taken by the defendant and his termination or suspension and forced termination or accepting a severance pay. He had participated as a witness in a sexual assault claim that defendant had asked him to participate in. After he made those statements, shortly thereafter, he was put under this investigation. And after that investigation, he was given the option to either accept a demotion or receive severance pay and leave his position. And so our argument would be that that temporal proximity of those two do suggest that there was some kind of connection that would lead a reasonable jury to be able to award relief on that claim. In terms of plaintiff's age discrimination claim, plaintiff was over a protected class. He was the age of 40. He suffered adverse employment action, as I had stated. He was qualified for his position. He received positive performance reviews and was able to complete the essential functions of his job. And he was replaced by younger employees. Those factors would be able to lead a jury to rule in our favor. Isn't there evidence that they had better qualifications? Plaintiff had been working for defendant, I believe, since 2009. He disputes that those younger employees did have better qualifications than him. And I would argue that that is a question of fact that should be left up to a jury rather than ruled on as part of a summary judgment motion. Can you explain your failure to accommodate theory? I'm not sure I fully get it. As I understand it, he was injured and his back was injured. They gave him other work. They let him work for a nonprofit and paid him. And then he got a doctor's note saying he was fine and they let him back. So where's the failure to accommodate? Is my timeline wrong? Am I missing something? So those facts are true. But at a certain point, the plaintiff was told that he did either have to return to work or leave, I believe. But when I thought he could return to work at that point. And they did let him return because that was all in 2019, right? I believe so. But I believe at that time he was still unable to lift heavy objects. And when he did try to return, he received constant comments from other employees about his inability to lift heavy objects. And it continued to cause issues with his employment. Thank you. Anything else? No, Your Honors. We ask that this court reverse the trial court's decision and remand back to the trial court. Thank you. Unless there are any other questions. Thank you. Thank you. Good afternoon. Aaron Lindstrom on behalf of Bells Brewery. May it please the court. There are two overarching themes, both of which you've already hit on, that resolve all the claims in this case. One is that there were legitimate reasons for the employment decisions that Bells took. And that resolves all the disability and retaliation claims, discrimination and retaliation claims. And then also the timeline for the Americans with Disabilities Act and the failure to accommodate claims under the Persons with Disabilities Act of Michigan. Those ones are barred by the statute of limitations. So that's the legitimate reason. The legitimate reason for Bells deciding to give him the two options of either having a last chance agreement in which he still received full pay, in which he received a title demotion, in which he was moved to a different shift, or to take a severance package, which ended up being a full year's severance package. The actions that led Bells to do that is that he made these statements to a veteran employee, who describes him... He argues in his brief, both in the appellant brief and in the reply, that you made those decisions before you concluded the investigation. Go ahead. He does. So that's not correct. On May 26, 2019... Excuse me, 2021, is when he was suspended. The reason he was suspended is because of the comments he made to Employee 1, who's the veteran, and the comment he made about Employee 2, who was an intern, where he made a comment about her. In the course of that investigation, where they looked into those things, another topic came up, which was Employee 3, which is the social media post on Facebook in the alleged eight-rape incident. So that issue, which actually happened back in 2018, the person had even been with the company since 2018, they weren't talking to Pemberton about that issue until he brought it up in his interview, when he was explaining his misconduct in those two other areas. And so, as to those two other areas, the statement to the first employee was the veteran's statement, where he asked the veteran how much his family would get if he committed suicide, if the veteran committed suicide. And he asked that question, even though he knew that the veteran had attempted suicide in the past. And that's clear that he knew... Yeah, my question was about the timing. I understand the facts. And you're saying that then, after that investigation, they made the decision? Correct. Okay. Right. And they substantiated the claims as to the veteran employee. He admitted to making these statements. And then they said to the statement, where he made a statement about the intern, that was... They did not substantiate that, and so that wasn't the basis of the decision. Do you know if the teddy bear statement's anywhere in the record? Are you aware? So I know his reply brief addresses, in a footnote, that it was actually about... It was another employee that made that statement, not... I don't know if it's in the record. There is a deposition where another witness, not the veteran, another witness described Pemberton that way. I'm not sure it's in the record, but it is in the deposition. But it would be... It would have been an entirely different witness? It was a different witness. So it would not have been the one who was the veteran? Correct. How does that play into, at least in the opening brief, it was suggesting that maybe this wasn't a big deal because the veteran just kind of liked Pemberton. And so how does the fact that he didn't make this statement change things? I don't think it changes anything. The point about the intimidation is that that's why the veteran put up with more statements before he actually went to HR. He didn't want to go to HR until something really egregious happened because Pemberton kept saying that he had a close relationship with HR and with company management. So the intimidation wasn't about physical violence that Pemberton would do against the veteran. It was that if he goes to complain to HR, well, that is someplace where Pemberton has a lot of influence, and so it won't be effective. So I think it's totally a red herring. It's not really relevant to the issue. The key point is that the statements that Pemberton did make are legitimate reasons given these two options, and that, in fact, is the reason that Bell's made the decision. It's on his employment discipline form, which includes the last chance agreement, and it's testified to by both the HR manager and the executive vice president, who's now the president of the company. Yeah, so in footnote one, it says, The plaintiff already clarified that the teddy bear comment came from the employee who was raped, EEA3, not EE1, who was the veteran. Correct. EE1 is the veteran. Yeah. EE3 is the person that had been gone since 2018. So I think the legitimate reason justifies all the allegations of discrimination and retaliation. They also had a legitimate reason for not giving him the positions where he bases his age discrimination claim on, and that's that one of them was a technical brewer position, and he didn't have any experience in that area. The other person had a bachelor of science degree in brewing science, which I didn't even know was a thing, but that guy was more qualified. And then, additionally, as the field service representative, he didn't have any experience with distributors, and it went to Dickinson, who did have that experience with distributors, having formally worked with him. So there's a legitimate reason for every decision that Bell's Brewery made here, and I can go into details on lots of other reasons as well for these claims. The plaintiff, both in their appellate brief and in reply, and he repeated it here, so I'd be curious about your thoughts that the claim that the investigation began after the plaintiff engaged in protected activity and the adverse, I'm reading from his brief, the adverse employment actions occurred in close proximity, strengthening the inference of retaliation. So there's a number of reasons it's not accurate. Some of the things he's pointing to as closely after is actually the Pullman lawsuit that happened, where Pullman was his prior... The one you fired. The one we fired for mistreating him, for mistreating Pemberton based on disability. So that was back in February 2019. What was his testimony in that Pullman case? Was it for Pullman or against him? He was supporting Pullman, not us. But in any of... He's the one who complained about Pullman? Correct, and because of how Pullman treated Pemberton for Pemberton's back injury, that's the reason that Pullman was let go, and then Pullman sued for disability retaliation. He apparently also had a back injury. But so there's that. That's not in close proximity. The investigation about EE3 that we just talked about is in close proximity because he brought it up. It only came up in the context of investigating the remarks about Employee 1 and Employee 2. And so that's when, in the course of that investigation, Pemberton said things about Employee 3 that made the company look into that further to see if he had more information. But that was a result of the fact they were already looking into his misconduct for the statements he made to the veteran and the statements he made about... that they believed he made about the intern, although that part they didn't pursue because that was not corroborated. Anything further? In that case, I'll rely on the brief on the other points. I believe we also have strong arguments on the statute of limitations point, the Title VII retaliation. It's not a prohibited... This is not one of the class-prohibited activities. And I already talked through the investigation of Employee 3. Okay. Thank you. Thank you, Your Honors. Okay, so there are a couple of things that I wanted to address. Defendant provides a few different reasons for termination of the plaintiff here. Plaintiff argues that those were not the reasons for his termination. That alone creates a genuine issue of material fact here that should allow this case to get past the motion for summary judgment. There was a question about whether... I asked you about the timeliness because it seems to me, at least on your failure to... other than your failure to accommodate, which I don't even know if it was exhausted, but moving away from that, that you filed well after the 300 days. And so why don't you have a statute of limitations problem? Because the abuse and discrimination that plaintiff was suffering was ongoing. He was suffering ongoing discrimination as part of his employment with defendant. As to his disability? Yes. Okay. I thought, didn't in 2019, November, he gets a clearance letter from his doctor? Yes, but he still suffered from back problems that caused him issues with his performance at his job. And he continued to hear comments from employees about his use of claiming disability here throughout his employment with defendant. And we would also argue that plaintiff was not accommodated for his disability that he was suffering from. Well, the points that your honor had made before were true about the fact that he was given some time on light duty. He was allowed to perform in a different job for a little bit. He was eventually called back to the office. And then after a short, after a period of time, he was terminated from that position. We would argue that that termination shows that defendant was not willing to continue to accommodate him for any disability that he was suffering. But I thought as a requirement of the job was that he had to be able to lift certain amount that he couldn't lift. He was able to lift lighter amounts and defendant for a while was able to structure his job duties so that he wasn't required to lift the heaviest objects that were normally required of him. So there was a reasonable accommodation that could have been made to him. It wasn't an essential function of the job that he had to be able to lift a certain weight. I mean, bells allowed him to hold the job for a period of time, but I don't think there's anything in the record indicating that that wasn't a requirement of the job to have the ability to lift the weight. I would argue that even without the ability to lift that weight, he could still perform the essential functions of the job. With just a small accommodation of having another employee available to lift that heavy weight, he could perform the rest of his essential duties. Do your honors have any other questions for me? Anything else? Thank you very much, counsel. Thank you, your honors. The case will be submitted.